**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.** **04-CR-222S - 01**

**HUGH STEVENS,**

**Defendant.**

---

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. William M. Skretny, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.

## PRELIMINARY STATEMENT

The defendant, Hugh Stevens ("the defendant"), is charged along with thirteen co-defendants in a multicount indictment with having violated Title 21 U.S.C. §§ 841(c)(2), 846, 848(a) and 853(a) and Title 18 U.S.C. § 2. (Docket #8). The defendant has filed a motion wherein he seeks "suppression of electronic eavesdropping evidence." (Docket #52). Defendant asserts that "there is a lack of probable cause and necessity for the issuance of the eavesdropping warrants" and therefore, "all evidence derived from the use of electronic eavesdropping" should be suppressed. (Docket #52).

## FACTS

On May 14, 2004, the Hon. John T. Elfvin issued an Order authorizing the interception of wire communications pursuant to Title 18 U.S.C. § 2518 to and from the "telephone facility bearing the number 716/947-0163, a residential telephone subscribed to by Sandra Jacobi," the wife of the defendant, and telephone number "716/863-8669," a "cellular telephone subscribed to by Jacobi's Restaurant, c/o John/Sandy Jacobi, 1404 Abbott Road, Buffalo, New York" based on the affidavit of Special Agent ("S.A.") Mark Gentile of the DEA sworn to May 14, 2004. Thereafter, orders extending the authorization for the interception of wire communications to and from the aforesaid telephones were issued on June 11, 2004 by the Hon. William M. Skretny, and on July 9, 2004 by the Hon. John T. Elfvin. In all of these Orders, the defendant is referenced as an "interceptee/violator" of 21 U.S.C. §§ 841(c)(1), 843(a)(7), 843(b) and 846.

## DISCUSSION AND ANALYSIS

The defendant asserts that "prior to obtaining the May 14 Order, law enforcement had a great deal of information about the alleged ephedrine trafficking activities of the defendant" (Docket #52, ¶ 83) and therefore, "there was a lack of necessity for the issuance of each of the wiretap orders at issue." (Docket #52, ¶ 93). The defendant also argues that "there was no probable cause to believe that [the defendant] was committing, or about to commit offenses that were greater or different than acting as a courier between Bruneau and Mishal at the time of the May 14th

application." (Docket #52, ¶ 90).

**A. The Probable Cause Issue:**

Basically, the defendant is requesting that a review of Judge Elfvin's decision in issuing the Intercept Order of May 14, 2004 be made so as to conclude that such order was improperly issued. The role of this Court in conducting such a review is no different than that conducted by a court of appeals and therefore, the admonition of the Second Circuit Court of Appeals is appropriately applied in this process wherein the court stated**:**

> "In reviewing a ruling on a motion to suppress wiretap evidence, we accord deference to the district court." *Miller*, 116 F.3d at 663 (quoting *Torres*, 901 F.2d at 231). Our role in reviewing the issuance of a wiretap order is not to make a *de novo* determination of the sufficiency of the application, "but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *Id.*

*United States v. Diaz*, 176 F.3d 52, 109 (2d Cir.), *cert. denied* by *Rivera v. United States*, 528 U.S. 875 (1999).

S.A. Gentile submitted an affidavit sworn to May 14, 2004 consisting of sixty-two typewritten pages wherein he described in substantial detail an "overview of [a] drug trafficking organization" in which the defendant was a participant during the period "between June 2003 and May 2004." (May 14, 2004 affidavit of S.A. Gentile, ¶ 72) based on a joint investigation conducted by United States and Canadian law

enforcement agencies. S.A. Gentile iterates specific details of drug activity by the defendant in conjunction with other members of the drug trafficking organization. (*See* ¶¶ 16-24; 30-59; 63-71; 75-79 May 14, 2004 affidavit of S.A. Gentile). An agent's training and experience can be considered in determining whether probable cause exists. *U.S. v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985), *cert. denied*, 486 U.S. 1043 (1987).

As the Second Circuit Court of Appeals has stated, "the standard for probable cause applicable to [18 U.S.C.] § 2518 is 'the same as the standard for a regular search warrant. Under *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed. 2d 527 (1983), probable cause for a search warrant is established if the totality-of-the-circumstances' indicate a probability of criminal activity. *See id.* at 230-32, 103 S.Ct. 2317." *United States v. Diaz,* 176 F.3d at 110. Considering the totality of the circumstances set forth in the Affidavit of S.A. Gentile in support of the application for the May 14, 2004 intercept order, the facts set forth in the application were adequate to support a finding of probable cause for the issuance of the May 14, 2004 intercept order and such finding is in further deference to the findings made by Judges Elfvin and Skretny in authorizing the Order of May 14, 2004 and the subsequent Orders at issue. *United States v. Diaz,* 176 F.2d at 109.

Therefore, it is RECOMMENDED that defendant's motion to suppress the "electronic eavesdropping evidence" on the basis that there was "no probable" cause

for the issuance of the eavesdrop orders at issue be DENIED.

**B. The Lack Of Necessity Issue:**

The defendant argues that because the law enforcement agencies already "had a great deal of information about the alleged ephedrine trafficking activities of the defendant," prior to the obtaining of the May 14, 2002 intercept order, "there was a lack of necessity for the issuance of each of the wiretap orders at issue." (Docket #52, ¶¶ 83, 93).

In his affidavit of May 14, 2004, S.A. Gentile acknowledges that "substantial information [had] been gathered against [the defendant] from both the Buffalo Resident Office and the DEA Sacramento Division Office investigations" but asserted that the investigations had "not revealed the full scope of [the defendant's] activities" and that "interceptions of conversations over the target telephones [would] result in the seizure and admissibility of highly relevant and incriminating conversations between [the defendant and his] sources of supply, other known interceptees, and as yet unknown co-conspirators."

Title 18 U.S.C. § 2518(1)(c) requires that:

> a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

The application for the Intercept Order of May 14, 2004 was based upon a sixty-two (62) typewritten page affidavit of S.A. Gentile of the DEA wherein he describes in great detail the history of the investigation to date and information obtained based on use of confidential informants, physical surveillance, pen registers and review of toll records. S.A. Gentile states that these normal avenues of investigation have been evaluated for use or have been attempted with only limited results. He further states that the convening of a federal grand jury, interview of subjects and the execution of search warrants would not be likely to succeed and would undoubtedly alert the target subjects of the investigation. Once again, the training and experience of the agent can be considered in this context of "necessity." *United States v. Fama, supra*.

Since the holding in *United States v. Torres*, 901 F.2d 205 (2d Cir.), *cert. denied* 498 U.S. 906 (1990), addresses the issue raised by the defendant on whether 18 U.S.C. § 2518(1)(c) was complied with, it is worthwhile to sacrifice brevity and set forth that Court's ruling in detail.

> Section 2518(1)(c) requires that an application for such an interception shall include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ." Similarly, section 2518(3)(c) requires the judge to whom an application for a wiretap is made to determine, as a condition of authorizing the tap, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ."

The application for the wiretap in this case was based upon a thirty-six page affidavit by DEA agent Timothy J. Sullivan dated May 27, 1987. Flores contends that when the application for a wiretap was made, traditional law enforcement methods had already achieved "extraordinary success . . . in penetrating the deepest reaches of the Torres Organization," and that the "affidavit utterly failed to establish, even on a superficial level, that less intrusive techniques had not been successful and could not be successful." In advancing this position, Flores points out that our decision in *United States v. Lilla*, 699 F.2d 99 (2d Cir. 1983), precludes the authorization of wiretaps based upon "generalized and conclusory statements that other investigative procedures would prove unsuccessful," *id*. at 104. Flores also argues that it does not suffice to show that a case belongs to some general class of cases which require wiretap investigation, citing *United States v. Kalustian*, 529 F.2d 585, 589 (9th Cir. 1975) (gambling case).

We are unpersuaded, and conclude that the application in this case provided a sufficient basis for authorizing the Flores wiretap. Section 2518 "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974). As we have stated:

> "[T]he purpose of the statutory requirements is not to preclude resort to electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents; rather, they only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods."

*United States v. Vazquez*, 605 F.2d 1269, 1282 (2d Cir. 1979) (quoting *United States v. Hinton*, 543 F.2d 1002, 1011 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976)), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980); *see also United States v. Fury*, 554

> F.2d 522, 530 (2d Cir), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977).
>
> The role of an appeals court in reviewing the issuance of a wiretap order, furthermore, "is not to make a *de novo* determination of sufficiency as if it were a district judge, but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.) (collecting cases), *cert. denied*, 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977). And, as the *Scibelli* court went on to say:
>
>> [I]n determining the sufficiency of the application a reviewing court must test it in a practical and common sense manner. The legislative history makes clear that section 2518(1)(c) is not designed to force the Government to have exhausted all "other investigative procedures".
>>
>> "The judgment [of the district judge] would involve a consideration of all the facts and circumstances. Normal investigative procedure would include, for example, standard visual or aural surveillance techniques by law enforcement officers, general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants. Merely because a normal investigative technique is theoretically possible, it does not follow that it is likely. What the provision envisions is that the showing be tested in a practical and commonsense fashion.
>
> S.Rep. No. 1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. & Admin.News, p. *Scibelli*, 549 F.2d at 226 (citations omitted).

*Id.* at 231-232) (brackets included); *See also Diaz, supra* 111.

Giving proper deference to Judge Elfvin's review and acceptance of the sixty-two (62) page affidavit of S.A. Gentile sworn to May 14, 2004 in support of the application for the Intercept Order and his decision to grant said application and issue the order in question, it is concluded that Judge Elfvin "properly found that conventional investigative techniques had been exhausted and that alternatives to wire interception would be unlikely to succeed or would be too dangerous." *Id. at* 111.

Therefore, it is RECOMMENDED that defendant's motion to suppress the electronic evidence on the basis of "non-necessity" be DENIED.

## CONCLUSION

___________Based on the foregoing, it is hereby RECOMMENDED that defendant's motion to suppress all "electronic eavesdropping evidence" be DENIED in its entirety; and it is hereby

**ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this

Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report,**

**Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

S/ H. Kenneth Schroeder, Jr.
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**

**DATED: Buffalo, New York**
**August 29, 2005**