UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                          **DECISION AND ORDER**
                                                            04-CR-222S

HUGH STEVENS and
SANDRA JACOBI,

                        Defendants.

# I.  INTRODUCTION

Presently before this Court are Defendants Hugh Stevens' and Sandra Jacobi's

Motions to Dismiss the Indictment based upon alleged violations of the Speedy Trial Act,

18 U.S.C. § 3161 *et seq.*, and the Sixth Amendment to the United States Constitution.

(Docket Nos. 253, 403,[1] and 415.)  For the reasons discussed below, Defendants' Motions

are both denied.

# II.  BACKGROUND

## A.    Facts

This Court assumes the parties' familiarity with the facts and record of proceedings

in this case.  Only those facts necessary to resolve the present motions are discussed

below.

On September 14, 2004, a federal grand jury returned a eight-count Indictment,

naming fourteen defendants.  Among the defendants were Hugh Stevens and Sandra

---

[1]  Jacobi's Motion also asks this Court to (1) set aside the jury verdict and grant a new trial
pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure, and (2) grant bail pending
sentence.  This Court will resolve these requests by separate Order.

1

Jacobi.  Also named were six individuals who were also subject to criminal prosecution in Canada ("Canadian co-defendants"), and two other individuals who were detained in California ("California co-defendants").

The Indictment charged Defendants with: (1) conspiracy to possess and distribute ephedrine, knowing and having reasonable cause to believe it would be used to unlawfully manufacture methamphetamine in violation of 21 U.S.C. § 841(c)(2); all in violation of 21 U.S.C. § 846; (2) conspiracy to manufacture 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1), all in violation of 21 U.S.C. § 846; (3) unlawfully possessing and distributing ephedrine, knowing and having reasonable cause to believe it would be used to manufacture methamphetamine in violation of 21 U.S.C. § 841(c)(2) and 18 U.S.C. § 2 (counts 3, 4 and 5); and (4) continuing criminal enterprise in violation of 21 U.S.C. §§ 841(c)(2) and 846; all in violation of 21 U.S.C. § 848(a) (counts 6 and 7).

On September 15, 2004, Defendants Stevens and Jacobi appeared before the Honorable H. Kenneth Schroeder, Jr., United States Magistrate Judge, for arraignment. Both Defendants pled not guilty, and the Government moved for detention.  At the detention hearings, Judge Schroeder granted the Government's motion as to Stevens, but denied it as to Jacobi, and instead released her on $200,000 bail fully secured.  Stevens has since remained in detention.

On December 27, 2006, this Court severed Defendants Hugh Stevens, Sandra Jacobi, Louis Russo, Christopher Russo, Kenneth Arthur Mego, and Lynn Hess from the

Canadian and California co-defendants. (Docket No. 140.[2]) The Government filed a Superseding Indictment on April 3, 2007, adding two counts: (1) smuggling in violation of 18 U.S.C. §§ 545 and 2; and (2) conspiracy to import ephedrine into the United States in violation of 18 U.S.C. § 545; all in violation of 18 U.S.C. § 371.

On April 16, 2008, approximately one month before trial was scheduled to commence on May 28, 2008, Defendants Stevens and Jacobi orally moved to dismiss the Superseding Indictment on speedy trial grounds. (Docket No. 256.) Resolution of the motion was deferred without objection from Defendants pending completion of trial.

Trial as to Stevens and Jacobi began on September 11, 2008. On October 16, 2008, this Court granted a mistrial as to Stevens due to his counsel's heart attack during the trial. Trial continued as to Jacobi, and she was found guilty on three of four counts.

## III. DISCUSSION

### A. The Speedy Trial Act

The Speedy Trial Act requires the government to bring criminal defendants to trial within 70 days of their first appearance before a judicial officer or the filing of an indictment, whichever is later. See 18 U.S.C. § 3161(c)(1); see also United States v. Oberoi, 295 F. Supp. 2d 286, 289 (W.D.N.Y. 2003) (Arcara, J.), aff'd, 547 F.3d 436 (2d Cir. 2008). In the event the defendant is not brought to trial within the 70 prescribed days, the indictment "shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2).

The statute excludes certain periods of delay from the Speedy Trial clock. For

---

[2] To date, none of the Canadian co-defendants have appeared in this district. (Docket No. 403-2, ¶ 212.)

instance, the 70-day period is tolled for the duration of any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or the other prompt disposition of, such motion."  18 U.S.C. §3161(h)(1)(D) (formerly (h)(1)(F)).  Also excludable is "any period of delay . . . if the judge ... find[s] that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A) (formerly (h)(8)(A)).  Under this exclusion, the judge must "set[] forth, in the record of the case, either orally or in writing, its reasons [for so finding]."  Id.

In cases involving multiple defendants, all defendants are governed "by a single speedy trial clock and [] delay attributable to any one defendant is charged against the single clock, thus making the delay applicable to all defendants."  United States v. Vilar, 568 F. Supp. 2d 429, 444 (S.D.N.Y. 2008) (citing United States v. Pena, 793 F.2d 486, 489 (2d Cir. 1986)).  When all defendants have not been apprehended and arraigned, the speedy trial clock does not begin to run as to any of the defendants unless and until the court severs the defendants that have appeared from those defendants who have not.  See Pena, 793 F.2d at 488-89 (four defendants indicted, only two apprehended and arraigned, court held that clock had been tolled as to all defendants until court severed the two appearing defendants).  "Of course, a defendant remains free to move for a severance at any time during a period in which [the] speedy trial clock has not begun to run because a co-defendant has not been apprehended."  Id. at 489.

But the clock will not be tolled indefinitely.  Under the Act, *"a reasonable period of delay* is allowed when a defendant has been joined for trial with co-defendants as to whom the time for trial has not run . . . ."  United States v. Blash, 43 Fed. Appx 399, 401 (2d Cir.

4

2002) (citing 18 U.S.C. § 3161(h)(6) (formerly (h)(7))) (emphasis added). However, in order to invoke the reasonableness requirement of subsection (h)(6), the defendant must move for severance from the other defendants as to whom the clock has not run. See United States v. Cephas, 937 F.2d 816, 822 (2d Cir. 1991) ("the duty to inquire into whether a delay caused by a co-defendant is reasonable is triggered only when the defendant has sought severance from the particular defendant who is responsible for the delay at issue").

Lastly, although the Act contains no reference to superseding indictments, United States v. Roman, 822 F.2d 261, 263-64 (2d Cir. 1987), *cert. denied*, 484 U.S. 954, 108 S.Ct. 347, 98 L.Ed.2d 373 (1987), courts treat a superseding indictment as if the "indictment is dismissed at the government's request and a second indictment is later filed." United States v. Kelly, 45 F.3d 45, 48 (2d Cir. 1995). The United States Court of Appeals for the Second Circuit explained:

> In such a case, the speedy trial clock for charges carried over from the original indictment stops on the date that the indictment is dismissed and does not begin to run again until after the defendant's first judicial appearance on the second indictment, at which time the clock resumes from the point at which it was stopped.

Kelly, 45 F.3d at 48 (citing cases).

Here, Defendants Stevens and Jacobi both argue that their speedy trial rights were violated. Although Defendants were not brought to trial until approximately four years after their arraignment on the original Indictment, Defendants do not challenge the entire four year period under the Act, but rather, Defendants challenge specific periods of time, which are discussed below.

### 1.    Sandra Jacobi

Jacobi first argues that fifteen days were not excluded during the time frame beginning July 14, 2005, through August 30, 2005, and thus ran from the Speedy Trial clock.  (Docket No. 403, ¶ 231.)  Second, Jacobi argues that all of the time beginning December 28, 2005, through April 23, 2007, ran from the Speedy Trial clock.  (Id. ¶¶ 233 & 236.)

### a.    July 14, 2005, through August 30, 2005 – 0 days ran

Jacobi argues that, under the Speedy Trial Act, Judge Schroeder had thirty days from July 14, 2005, to resolve her motion.  Because Judge Schroeder took forty-five days to resolve her motion, Jacobi claims fifteen days ran from the Speedy Trial clock.

Since all of the Defendants had not appeared in this district prior to August 30, 2005, the speedy trial clock did not start, and no time could have run during this period. See Pena, 793 F.2d at 488-89.  The only way for Jacobi to challenge these fifteen days is to argue the delay was unreasonable under (h)(7).  See Id. at 489 ("Because the Cabas [defendants] were never arraigned under Piteo[3], the clock applicable to all defendants did not begin to run.  In such cases, the only relevant statutory provision is section 3161(h)(7), and the only relevant question is whether the delay is reasonable.").  But since severance was not sought until April 18, 2006 (Docket No. 112), Jacobi cannot challenge these fifteen days as unreasonable delay under (h)(7).  See Cephas, 937 F.2d at 822 ("the duty to inquire into whether a delay caused by a co-defendant is reasonable is triggered only when the defendant has sought severance from the particular defendant who is responsible for

---

[3] Referring to United States v. Piteo, 726 F.2d 50, 52 (2d Cir. 1983).

the delay at issue").

The finding that zero days ran during this period is consistent with this Court's Order dated January 11, 2007, in which it was held that zero days had run on the Speedy Trial clock as of that date.  (Docket No. 145.)

### b.    December 28, 2005, through April 25, 2007 – 34 days ran

Jacobi next challenges the time period beginning December 28, 2005, through April 25, 2007.  (Docket No. 403, ¶¶ 232-33.[4])  Jacobi does not argue that this Court failed to exclude time during this period or that this Court improperly excluded time, but rather, she argues that her case was "trial ready as of the end of December 2005 [and that] an initial trial date was not scheduled until one year after that to take place one year and four months later." (Id. ¶ 233.)  Jacobi also argues that the delay beginning December 28, 2005, through December 28, 2006, violated the Speedy Trial Act "[u]nder the authority of Zedner[5] and Oberoi." (Id. ¶ 236.)

As an initial matter, Jacobi's case was not "trial ready" as of December 2005 because all of her co-defendants named in the Indictment had not appeared in this district, and the case could not proceed to trial until all named defendants appeared or Jacobi, who claims she was trial ready, was severed from those defendants.  And since Jacobi was not severed from the non-appearing co-defendants until December 27, 2006, the earliest date

---

[4] The specific period of time challenged by Jacobi is unclear.  For instance, Jacobi challenges the time from the "end of December 2005 [to] one year and four months later."   (Docket No. 403, ¶ 233.) Although Jacobi does not identify the precise dates, this Court concludes that Jacobi's reference to "the end of December 2005" is actually December 28, 2005, the date on which this Court adopted Judge Schroeder's Report and Recommendation as to Jacobi.  (Docket No. 96.)  This Court also concludes that Jacobi's reference to "one year and four months later" refers to April 25, 2007, the date on which this Court scheduled trial.  (See Docket No. 141.)

[5] Referring to Zedner v. United States, 547 U.S. 489, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006).

on which her case could have been trial ready was the date of severance, December 27, 2006.

Jacobi's argument that the period of delay from December 28, 2005, through December 28, 2006, violated her speedy trial rights "[u]nder the authority of <u>Zedner</u> and <u>Oberoi</u>" is without merit. Jacobi offers no specific explanation as to how this delay violates <u>Zedner</u> or <u>Oberoi</u>. And upon this Court's review of both decisions, this Court finds the delay did not run afoul of the holdings in either case. In fact, Jacobi concedes that "this delay was primarily attributable to the fact that [] Stevens had relieved his initial attorney [and then] filed a motion to reset deadlines." (Docket No. 403, ¶ 234.)

As a result, this Court will begin its analysis from December 28, 2006, the day after this Court severed Jacobi. That day, the parties appeared for a status conference. (Docket No. 141.) At the status conference, this Court scheduled trial for April 25, 2007, and a Final Pre-Trial Conference for February 28, 2007. This Court excluded time from December 28, 2006, through February 28, 2007, pursuant to subsection (h)(1)(D), to allow the parties to make motions, and submit their pre-trial materials.

But prior to the Final Pre-Trial Conference, Jacobi's co-defendant, Lynn Hess, moved for an extension of time to file motions *in limine*. (Docket No. 150.) This Court granted the motion, and adjourned the Final Pre-Trial Conference to April 4, 2007. (Docket No. 153.) Neither the motion nor this Court's Order referenced a Speedy Trial Act exclusion. Therefore, the clock began to run on March 1, 2007, the date after this Court's original exclusion expired. <u>See Oberoi</u>, 547 F.3d at 456 (time begins to run if further exclusion is neither referenced in the motion seeking an extension nor the order granting the extension).

Thirty-three days elapsed from March 1, 2007 until April 3, 2007, when the Government filed a Superseding Indictment. (Docket No. 164.) The Superseding Indictment stopped the clock. Kelly, 45 F.3d at 48. The following day, April 4, 2007, this Court arraigned Jacobi on the Superseding Indictment, which re-started the clock. Id. At the arraignment, this Court scheduled a status conference for April 6, 2007. (Docket No. 169.) This Court did not, however, exclude the intervening day – April 5, 2007 – from the clock. Thus, one day ran from the clock – April 5, 2007.

On April 6, 2007, this Court adjourned the April 25, 2007, trial date at the request of Stevens and Jacobi. It then scheduled a status conference for April 23, 2007, and excluded time through that date pursuant to subsections (h)(7)(A) ("interests of justice") and (h)(1)(D) ("motions exception"). (Docket No. 170.)

At the status conference on April 23, 2007, trial was rescheduled for September 10, 2007, with jury selection to begin September 7, 2007. Time was excluded from April 23, 2007, through September 7, 2007, pursuant to subsections (h)(7)(A) and (h)(1)(D). (Docket No. 171.) Therefore, all but thirty-four days were excluded from the speedy trial clock during the time period beginning December 28, 2005, through April 25, 2007.

### 2. *Hugh Stevens*

Defendant Hugh Stevens challenges one specific period of time – April 23, 2007, through September 7, 2007. (Docket No. 415, ¶¶ 68-69.) Stevens concedes that on April 23, 2007, this Court excluded time through September 7, 2007, pursuant to subsections (h)(1)(D) (motions exclusion) and (h)(7)(A) (interests of justice exclusion). (Id. ¶ 68.) But Stevens argues that "there was no interest of justice justification placed on the record," and this Court excluded time because of its "calendar congestion." (Id. ¶ 69.) Stevens also

argues that motions *in limine* should not stop the clock.  (Id. ¶ 68.)

Stevens' arguments are without merit for several reasons.  First, although this Court did not explicitly reference the statute number, this Court clearly excluded time pursuant to (h)(7)(a), in the interests of justice, and detailed its reasons for making such a determination.  For instance, this Court stated:

> I find specifically that the ends of justice outweigh the interest of defendants and society to a speedy trial. . . . [N]ot only does the interest of defendant and society outweigh the interests that relates to the exclusion, this will enable you to follow all avenues with respect to a disposition other than by trial.  And that will work to everybody's advantage.  But in the meantime the government continues to organize its witnesses.  Probably at the next status on this case I will set a firmer schedule if there's not a commitment to a plea with respect to getting all the update materials in for purposes of trial.

(Docket No. 299, Tr. April 23, 2007, pp. 19:19-20:10.)

Thus, this Court made the required findings to justify the interest of justice exception under (h)(7)(a).

Contrary to Stevens' contention, this Court did not exclude time because of a crowded calendar.  Additionally, even if this Court were to accept Stevens' argument that motions *in limine* should be treated differently than other motions for purposes of the Speedy Trial Act, it would not affect the exclusion because this Court's exclusion of time pursuant to subsection (h)(7)(A) is sufficient to justify the delay.  Therefore, this Court finds that time was properly excluded, and no time ran during this period.

. . .

For the reasons stated above, this Court finds that a total of thirty-four days has run from the Speedy Trial clock applicable to both Stevens and Jacobi.  Accordingly, the Speedy Trial Act was not violated, and both Defendants' Motion to Dismiss must be

denied.

**B.      Defendants' Sixth Amendment Speedy Trial Claims**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . ."  U.S. Const. amend VI.  "Although unusual, it is possible for a delay that does not violate the [Speedy Trial Act] to run afoul of the Sixth Amendment's guarantee of a speedy trial."  United States v. Stone, No. 05-CR-401, 2006 WL 436012, at *6 (E.D.N.Y. Feb 22, 2006).

To determine whether there has been a constitutional speedy trial violation, courts look at four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant.  United States v. Jones, 129 F.3d 718, 724 (2d Cir. 1997) (citing Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972)).  All of the four factors must be weighed together, and no one factor is dispositive.  Barker, 407 U.S. at 533.  But "delay alone is insufficient to constitute a Sixth Amendment violation."  Garcia Montalvo v. United States, 862 F.2d 425, 426 (2d Cir. 1988).  "Where there is a reasonable explanation for the delay, its negative implications will be vitiated."  Id.

Here, both Jacobi and Stevens contend that their Sixth Amendment speedy trial rights have been violated.  Each Defendant will be discussed below.

*1.      Sandra Jacobi*

Application of the first Barker factor weighs in Jacobi's favor.  For instance, the length of delay between her arraignment and trial spanned approximately four years, and

any delay in excess of eight months constitutes presumptive prejudice. <u>United States v.</u> <u>Vassell</u>, 970 F.2d 1162, 1164 (2d Cir. 1992). However, "such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other <u>Barker</u> criteria." <u>Doggett v. United States</u>, 505 U.S. 647, 656, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

Regarding the second <u>Barker</u> factor, Jacobi argues that the Government intentionally delayed this case, and cites two examples in support of her argument. Jacobi first claims that due to the "simultaneous prosecution in Canada, the United States Attorney knew, or should have known, that it was not reasonable to expect the Canadian defendants would appear in this District for trial until long after the cases against the Defendants from the Western District of New York were trial ready." (Docket No. 403, ¶ 213.) As a result, Jacobi argues that "the joinder of the Canadian defendants was subterfuge undertaken by the Government to prevent the speedy trial clock from starting and that the delay . . . violated [Jacobi's] right to a speedy trial." (<u>Id</u>. ¶ 214.) Jacobi also argues that the Government's Superseding Indictment caused delay because it "necessitated a request from defense counsel at the time to adjourn the trial to engage in additional discovery, seek a bill of particulars, and re-evaluate their trial strategy." (<u>Id</u>. ¶ 217.)

Without more, however, Jacobi's allegations against the Government do not establish bad faith or intentional delay employed for the purpose of securing a tactical advantage. With respect to Jacobi's first allegation, this Court finds that the Government's joinder of the Canadian co-defendants was not subterfuge done for the purpose of intentionally delaying Jacobi's trial. The Government has wide prosecutorial discretion, and here, the Government determined that judicial economy and the expenditure of

Government resources weighed in favor of trying most, if not all, the Defendants together. (See Tr. Nov. 29, 2006, p. 3.)  Because "[t]here is a strong presumption in favor of joint trials for jointly indicted defendants, particularly where, as here, the 'crime[s] charged involve a common scheme or plan,'" <u>United States v. Jackson</u>, No. 90-CR-109, 1990 WL 151098, at *2 (S.D.N.Y. Oct. 5, 1990) (citing <u>United States v. Girard</u>, 601 F.2d 69, 72 (2d Cir. 1979)), this Court cannot conclude that the Government's decision to join the Canadian defendants was based on ill motive.  Indeed, weighing against such a finding is the Government's repeated attempts to pursue the Canadian defendants, as demonstrated in its multiple reports on due diligence.  (Docket Nos. 118 & 143.)

This Court further notes that despite now claiming prejudice resulting from the joinder of the Canadian defendants, Jacobi never moved to sever herself from these defendants.  Instead, Stevens moved for severance.  And in granting Stevens' motion, this Court severed Jacobi even though she did not move for such relief.  <u>Cf.</u> <u>United States v. Vasquez</u>, 918 F.2d 329, 338 (2d Cir. 1990) (citing <u>Barker</u>, 407 U.S. at 532) ("failure to assert the right will make it difficult for a defendant to prove [she] was denied a speedy trial").

As to Jacobi's argument that the Government intentionally delayed these proceedings by seeking a Superseding Indictment shortly before trial was scheduled to begin, and thus prompted Jacobi to request an adjournment for the purpose of filing new motions addressing the Superseding Indictment, this argument is also rejected.  First, this Court adjourned the trial scheduled for April 24, 2007, not only to allow Jacobi to consider the effect of the Superseding Indictment, but also at the request of Stevens to allow the parties additional time to pursue a plea.  (Docket No. 170.)  Second, despite Jacobi's

argument that the Superseding Indictment necessitated a request to adjourn the trial to "re-evaluate their defense strategy" and "engage in additional discovery," this Court previously found that the Superseding Indictment did not substantially change the nature of the case. (Docket No. 281, Tr. April 6, 2007, p. 6, 18-20; p. 9, 4-11; Docket No. 403, ¶ 217.) Moreover, despite Jacobi's argument that an adjournment was necessary to provide her time to file additional motions addressing the Superseding Indictment, Jacobi never filed any motions. (Docket No. 172.)

Consequently, this Court finds that the Government is not to blame for the delay in this case. This case involves charges of a complex conspiracy, multiple defendants, and numerous venues, jurisdictions, and countries. There has been extensive motion practice by all Defendants, objections to Reports and Recommendations, an interlocutory appeal to the United States Court of Appeals for the Second Circuit (later withdrawn), email and letter communications with this Court, numerous changes in counsel, and multiple requests for trial adjournment by Defendants themselves.[6] In fact, both Jacobi and Stevens concede that they are responsible for some of the delay. (Docket No. 403, ¶¶ 217 & 234; Docket No. 415, ¶ 75.)

With respect to the third Barker factor, this Court finds that this factor weighs against Jacobi's claim because she first raised the issue of her speedy trial rights on April 16, 2008, approximately three and one-half years after Indictment. See e.g., Vasquez, 918

---

[6] Jacobi changed counsel once, while Stevens has changed counsel numerous times, and has been represented by seven different attorneys. Additionally, Jacobi and Stevens often requested trial adjournments. For instance, on April 4, 2007, Jacobi and Stevens both asked this Court to adjourn trial scheduled for April 25, 2007. (Docket No. 170.) And when jury selection and trial was rescheduled for September 7, 2007, it was again Jacobi and Stevens that requested an adjournment of that trial date. (Docket No. 215.) Lastly, when this Court rescheduled trial for May 28, 2008, counsel for Stevens moved to adjourn that trial date. (Docket No. 274.)

F.2d at 338 (2d Cir. 1990) (third factor "weighs heavily" against petitioners where they "waited roughly 22 months before advancing their speedy trial claims and this hardly renders plausible their contention that an expeditious resolution of their cases was a matter of pressing constitutional importance for them"); <u>United States v. Abouhalima</u>, 961 F. Supp. 78, 83 (S.D.N.Y. 1997) (waiting many months before raising Sixth Amendment speedy trial objection weighs against a violation); <u>United States v. Love</u>, 859 F. Supp. 725, 738 (S.D.N.Y. 1994) (prolonging proceedings by requesting extensions of time to file motions papers weighs against defendant's motion); <u>Amable v. Scully</u>, 91-CV-4694, 1993 WL 300036, at *3 (S.D.N.Y. Aug. 4, 1993) (asserting motion fifteen months after petitioner's arrest weighs against a finding that petitioner's right to a speedy trial was violated).

Lastly, Jacobi argues that the fourth <u>Barker</u> factor weighs in favor of her claim because she was prejudiced by the delay in this case. Jacobi claims that the Government's intentional delay of these proceedings required her to incur significant legal fees. (Docket No. 403, ¶¶ 215-18.)

<u>Barker</u> identified three examples of prejudice: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) the possibility that the defense will be impaired by dimming memory or loss of exculpatory evidence or favorable witnesses. <u>Barker</u>, 407 U.S. at 532. A defendant must demonstrate more than presumptive prejudice. <u>Doggett</u>, 505 U.S. at 655. In other words, the length of the delay alone will not support a Sixth Amendment speedy trial claim. <u>See e.g.</u>, <u>Barker</u>, 407 U.S. at 533 (no speedy-trial violation despite a delay of "well over five years"); <u>Rayborn v. Scully</u>, 858 F.2d 84, 89 (2d Cir. 1988) (no violation despite a delay of "over seven years"); <u>United States v. Lane</u>, 561 F.2d 1075, 1078 (2d Cir. 1977) (no violation despite a delay of 58 months).

First, the premise of Jacobi's argument is faulty in light of this Court's finding that the Government did not intentionally delay these proceedings. Second, Jacobi has not identified a single case, and this Court has not found one upon its own review, holding that the expense associated with defending oneself amounts to prejudice. Consequently, given the absence of particularized prejudice, this Court finds that this factor weighs against Jacobi. United States v. Koskotas, 888 F.2d 254, 258 (2d Cir. 1989) (holding that when there is "little basis for faulting the government . . . a defendant would be obliged to make a substantial showing of likelihood of prejudice to prevail.").

. . .

Thus, upon balancing the four Barker factors, this Court finds that Jacobi's Sixth Amendment rights have not been violated.

### 2. Hugh Stevens

Stevens also argues that his Sixth Amendment right to a speedy trial was violated. Like Jacobi, Stevens argues that the Government is responsible for the delay because of the joinder of the Canadian co-Defendants and the timing of the Superseding Indictment. (Docket No. 415, ¶ 76.) Stevens also contends that the Magistrate Judge and this Court were responsible for the delay because "it took [] nine months to rule on his motion." (Id. ¶ 75.) Finally, Stevens argues that he asserted his right to a speedy trial on multiple occasions, and that he has been prejudiced by the delay.

This Court's analysis of the first two Barker factors is the same as it was for Jacobi. Presumptive prejudice exists because the time from Indictment to trial exceeded eight months. And to the extent Stevens relies on the argument that the Government

intentionally delayed this case by joining the Canadian co-defendants and seeking a Superseding Indictment, the analysis is also the same as above.[7]

Stevens' attempt to blame the Magistrate Judge and this Court for the delay in ruling on his motion is also unpersuasive. Although nine months appears to be a lengthy time to decide a motion, further examination of the record reveals that the time was justified.

On April 18, 2006, Stevens filed an omnibus motion seeking eight forms of relief including: (1) bail; (2) severance; (3) compelling the Government to release certain statements, recordings, and other items; (4) dismissing one or both Counts of the indictment; (5) dismissing Count Seven of the indictment; (6) setting a trial date; (7) issuing an order permitting Stevens to be fingerprinted and to complete his application of United States citizenship; and (8) an order permitting the filing of an oversized memorandum of law. (Docket No. 112.) After issuing a Scheduling Order on the motion, Judge Schroeder took the motion under advisement on May 26, 2006. (Docket No. 116.) On June 13, 2006, Stevens submitted fourteen exhibits to the Court, which were neither submitted nor attached to the motion, but were previously referenced therein. (Docket No. 122.) The exhibits exceeded five hundred and fifty pages. (Id.) Thus, the motion was fully submitted for decision as of June 13, 2006.

Two days after Stevens submitted his exhibits, Judge Schroeder issued an order of continuance, extending the time to resolve the motion after finding it both complex and extensive. (Docket No. 123.) Thereafter, Judge Schroeder issued three additional

---

[7] Moreover, Stevens never took issue with the Superseding Indictment at the time it was returned nor did he argue that it would delay the proceedings. Instead, he requested an adjournment after its return in order to pursue a plea. (Docket No. 281, Tr. April 6, 2007.)

continuances, all citing the complexity and extensiveness of the motion. (Docket Nos 124, 127, & 128.)

On September 27, 2006, Judge Schroeder resolved the motion by way of two separate docket entries – a Decision and Order (Docket No. 129) and a Report, Recommendation and Order (Docket No. 130). On October 12, 2006, Stevens filed objections to the Report, Recommendation and Order (Docket No. 131) to which the Government responded in opposition (Docket No. 134), and this Court entertained oral argument on November 29, 2006 (Docket No. 136). On December 27, 2006, this Court resolved the objections. (Docket Nos 139 & 140.)

Thus, it took a little more than three months for the Magistrate Judge to resolve Stevens' omnibus motion, and then, less than one month for this Court to resolve Stevens' objections. Given the complex nature of the motion, the time necessary to resolve it was not unreasonable.

With respect to the third Barker factor, Stevens claims that he asserted his right to a speedy trial "on a number of occasions." (Docket No. 415, ¶ 79.) But rather than referring to a specific, explicit assertion of his speedy trial right, Stevens argues that his "motion for bail and/or release on [Electronic Monitoring System]," constitutes an assertion of his speedy trial right. (Id. ¶ 78.) To support his argument, Stevens cites Cain v. Smith, a case from the United States Court of Appeals for the Sixth Circuit, which held that a demand for bail is the functional equivalent of a demand for a speedy trial. 686 F.2d 374, 384 (6th Cir. 1982).

This Court is not bound by the Cain decision, and does not find it persuasive on this issue. Cain was decided over twenty-five years ago, and since that time only one federal

18

court, the United States Court of Appeals for the Sixth Circuit, has it cited for the position cited by Stevens.  See Maples v. Stegall, 427 F.3d 1020, 1029 (6th Cir. 2005).  No federal court outside the Sixth Circuit has cited Cain on this issue, and it appears that the Sixth Circuit is the only Circuit to construe a bail request as a speedy trial assertion.  Accordingly, this Court finds that Stevens asserted his speedy trial right for the first time on April 16, 2008, the date on which he specifically, and explicitly, asserted this right, and approximately three and one-half years after Indictment.

But even if this Court were to accept Stevens' argument that his request for bail amounts to a speedy trial assertion, and therefore find that Stevens asserted his right to a speedy trial as early as November 23, 2004, this Court would still reject his claim because "speedy trial claims must be viewed in light [of the defendants] other conduct." United States v. Loud Hawk, 474 US 302, 314, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986). And, like Jacobi, Stevens' conduct demonstrates that he has been responsible for a large portion of the delay.  He has extensively litigated this complex case through the assistance of seven different attorneys, and now seeks to unreasonably ascribe the delay accompanied by such litigation to the Government.  Although Stevens is, of course, entitled to fully defend himself, he cannot also claim that the delay associated with his extensive motion practice, changes in counsel, and multiple requests for trial adjournments were delays caused by others, particularly the Government.

Lastly, in support of the fourth Barker factor, Stevens argues that the delay prejudiced him for two main reasons.  First, Stevens argues that a material witness, Roger Bruneau, Sr., died of natural causes during the pendency of this action.  Stevens claims generally that Bruneau would have served as an exculpatory witness.  Second, he argues

that his pre-trial detention caused him stress, anxiety, and separation from his family.

In regards to Bruneau's death, this Court notes that Bruneau died early in this case, February 14, 2005, well before Stevens asserted his speedy trial right on April 16, 2008. Moreover, Stevens has not demonstrated that Bruneau would have testified at all, let alone on his behalf.  See United States v. Solomon, 95-CR-154, 1996 WL 399814, at *4 (S.D.N.Y. Jul 16, 1996) (denying defendant's claim of prejudice after finding that defendant "has made no showing that [unavailable witness] would testify on her behalf, even assuming that he would testify as she alleges.").  In fact, this Court listened to the wiretaps involving Bruneau, where he discusses Stevens, and finds they militate against Stevens' claim that Bruneau would have exonerated him.  Finally, if Bruneau provided any exculpatory evidence to the Government before his death, the Government would have disclosed it to Stevens under Brady.

With regard to Stevens' claim of prejudice owing to his pre-trial detention, this Court does not minimize the difficulties associated with pre-trial detention, but finds Stevens' pre-trial incarceration by itself does not sufficiently establish a constitutional violation under all of the facts presented in this case.  Additionally, since Stevens was responsible for much of the delay in this case, his continued pre-trial detention is not unduly or unfairly prejudicial.

. . .

For the reasons stated above, this Court concludes that the delays in this case do not sufficiently weigh in support of Stevens' claims that his Sixth Amendment right to a speedy trial has been violated.

## IV. CONCLUSION

This Court finds that Defendants Hugh Stevens and Sandra Jacobi have failed to establish violations of their rights under the Speedy Trial Act or the Sixth Amendment. Therefore, Defendants' Motions to Dismiss on Speedy Trial Grounds are both denied.

## V. ORDERS

IT IS HEREBY ORDERED, that Defendant Hugh Stevens' Motion to Dismiss on Speedy Trial Grounds (Docket Nos. 253 and 415) is DENIED.

FURTHER, that Defendant Sandra Jacobi's Motion to Dismiss on Speedy Trial Grounds (Docket Nos. 253 and 403) is DENIED.

SO ORDERED.


Dated: July 31, 2009
     Buffalo, NY

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge