UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HUGH STEVENS,

                        Petitioner,

     v.                                          **DECISION AND ORDER**
                                                    04-CR-222S
                                                    09-CR-304S
                                                    11-CV-236S

UNITED STATES OF AMERICA,

                        Respondent.

## I.  INTRODUCTION

Presently before this Court is Petitioner Hugh Stevens Motion to Vacate, Set Aside, or Correct his Sentence and Conviction pursuant to 28 U.S.C. § 2255.  For the reasons discussed below, Petitioner's motion is denied.

## II.  BACKGROUND

On September 10, 2009, Petitioner appeared before this Court and pled guilty to Count Six of the Superseding Indictment in case number 04-CR-222S and Count One of the Superseding Indictment in case number 09-CR-304S which charged him with engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848(a), and conspiracy to import, possess and distribute a List I chemical knowing and having reasonable cause to believe it will be used to unlawfully manufacture a controlled substance in violation of 21 U.S.C. § 846.  (Docket No. 456.)[1]

In the plea agreement, Petitioner and Respondent agreed that the total offense level, including a reduction for Petitioner's acceptance of responsibility, was 42, and that

---

[1] All docket citations refer to case number 04-CR-222S.

Petitioner's criminal history category was I, which resulted in a Guidelines sentencing range of 360 months to life, a fine of $25,000 to $2,000,000, and a period of supervised release of three to five years.  (Docket No. 456, ¶ 13.)

Included in the plea agreement is Petitioner's acknowledgment that he

> is not a citizen of the United States and that the defendant is on notice that the defendant's ability to enter, remain and/or reside in the United States is subject to the laws, regulations and associated policies of the Department of Homeland Security.  The defendant understands that any effect that the defendant's conviction in this action will have upon the defendant's immigration status will be determined by the Department of Homeland Security in a separate proceeding.  The defendant has had an opportunity to fully determine what the consequences of the defendant's conviction may be on the defendant's immigration status.

(Docket No. 456, ¶ 18.)

Further, the parties agreed that after sentencing

> the Office of the United States Attorney for the Western District of New York agrees not to oppose a request by the defendant to transfer to Scotland for service of his sentence, pursuant to the terms of the Treaty for the Transfer of Offenders between the United States and Scotland.  The defendant understands that the decision of any such transfer, however, is at the discretion of the Office of Enforcement Operations of the United States Department of Justice.

(Docket No. 456, ¶ 19.)

Based on this agreement, Respondent "knowingly waive[d] the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release." (Docket No. 456, ¶ 25.)  Further, the parties agreed that there were "no promises made by anyone other than those contained in this agreement."  (Docket No. 456, ¶ 28.)

On March 17, 2010, this Court sentenced Petitioner to a term of 240 months. (Docket No. 514.)  This Court also imposed a period of supervised release for a term of three years.  (Docket No. 514.)  No fine was imposed.  (Docket No. 514.)  The Clerk of the Court filed the sentencing judgment on December 22, 2006.  (Docket No. 519.)  Petitioner did not appeal his conviction or sentence.

On March 14, 2011, Petitioner filed the instant Motion to Vacate, Set Aside, or Correct his Sentence and Conviction pursuant to 28 U.S.C. § 2255.  (Docket No. 540.)  With leave, Petitioner filed an amended motion to vacate on September 6, 2011.  (Docket No. 550.)  Respondent filed an affidavit in opposition to the petition on October 13, 2011. (Docket No. 552.)  Petitioner was then granted permission to file a reply, which he did on December 6, 2011.  (Docket No. 555.)  Petitioner filed a request for a status conference on May 7, 2012.  (Docket No. 556.)

### III.  DISCUSSION

**A.**     **Standard of Review**

28 U.S.C. § 2255 allows federal prisoners to challenge the constitutionality of their sentences.  That section provides, in pertinent part, that

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

The Second Circuit has held that a "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)).

**B.    Petitioner's § 2255 Motion**

In his motion, Petitioner advances the following arguments: (1) he was denied effective assistance of counsel based on his counsels' failure to accomplish transfer to Scotland; (2) the Respondent breached the terms of the plea agreement; and (3) his plea was involuntary because it was unduly influenced by counsels' promises. Respondent argues that Petitioner's claims are precluded by the waiver of appeal and collateral attack provision contained in the plea agreement.

### 1. Petitioner Did Not Receive Ineffective Assistance

The United States Supreme Court has held that an ineffective assistance of counsel claim may be raised in a § 2255 motion even if it was not raised on direct appeal. Massaro v. United States, 538 U.S. 500, 123 S. Ct. 1690, 1696, 155 L. Ed. 2d 714 (2003); see also Graff v. United States, 269 F. Supp. 2d 76, 78-79 (E.D.N.Y. 2003).

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." U.S. Const. amend VI. It is well-established that "the right to counsel is the right to the effective assistance of counsel." Eze v. Senkowski, 321 F.3d 110, 124 (2d Cir. 2003) (quoting McMann v.

Richardson, 397 U.S. 759, 771 n. 14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).

The standard for determining whether a defendant was provided with effective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish a claim under the Strickland standard, "a defendant must show (a) that counsel's representation 'fell below the objective standard of reasonableness' based on 'prevailing professional norms' and (b) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Eze, 321 F.3d at 123 (quoting Strickland, 466 U.S. at 688, 694).

When a conviction is secured by way of plea, the second Strickland factor is modified to require a defendant to demonstrate that but for counsel's unprofessional errors, he would not have pled guilty. See Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); Tate v. Wood, 963 F.2d 20, 26 (2d Cir. 1992). There is a strong presumption in favor of the reasonableness of an attorney's performance. See Gilbert v. United States, 05-CV-325, 2006 WL 1174321, at *3 (N.D.N.Y. May 2, 2006) (citing Strickland, 466 U.S. at 688). This presumption applies because it is "too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." Strickland, 466 U.S. at 689.

Petitioner claims that his lawyer was ineffective because he guaranteed him that he would serve his sentence in Scotland.[2] Petitioner identifies a statement allegedly made by

---

[2] Petitioner refers to counsel without distinguishing between the attorneys that represented him. At his plea proceeding Petitioner was represented by Angelo Musitano and Fonda Kubiak. Because Petitioner refers to his attorney as "he" this Court assumes Petitioner is referring to Mr. Musitano.

his attorney to the effect that Petitioner would serve his sentence in Scotland and that his attorney would have a drink with him in Canada. Other assurances were also made that Petitioner's imminent transfer to Scotland was "99% sure." (Docket No. 551, pp. 9, 13.)

Petitioner's claim lacks merit and runs contrary to Petitioner's own statements at his plea proceeding. It is also contrary to the text of the plea agreement.

First, on September 10, 2009, this Court specifically addressed "what exposure [Petitioner would] have in terms of not only sentencing, but what [his] rights are post-sentence as far as Scotland is concerned, in terms of what's discretionary, in terms of treaty arrangements, that kind of thing." (Docket No. 548, 13:12-19.) This Court explicitly warned Petitioner that pursuant to the plea agreement "nobody, none of the attorneys or you, can argue or urge anything that is not specifically addressed in [the plea] agreement." (Docket No. 548, 33:24-34:3.) As to the transfer negotiations between Petitioner and Respondent this Court noted the following:

> The Court: [T]here's a reference to what I understand to be part of the negotiations that have led to the finalization of this plea agreement, and that has to do with a reference and an agreement as far as the Treaty for the Transfer of Offenders between the United States and Scotland. Are you familiar with that?
>
> The Defendant: Yes.
>
> The Court: And in other words, what your attorneys are going to try to do is request that you be transferred to Scotland for the service of your sentence, and the government binds itself through this agreement not to object or oppose that request that you serve your sentence in Scotland pursuant to the terms of the Treaty for Transfer provisions, do you understand?
>
> The Defendant: Yes.
>
> The Court: Okay. Yes, Mr. Duszkiewicz?

| | |
|---|---|
| Mr. Duszkiewicz: | Well, your Honor, the understanding is that the U.S. Attorney's office in the Western District of New York is not going to oppose it. There's a caveat that says there's other people who actually make the decision. But the agreement is that this office will not be opposing his transfer. It's not a guarantee the U.S. Government is going to give it to him by any stretch of the imagination. |
| The Court: | Well, the actions with respect to whether or not you receive the opportunity to serve your sentence in Scotland is discretionary with the Office of Enforcement Operations with the United States Department of Justice. So the request will be made. They have the discretion to enter you into the program pursuant to the treaty or not, do you understand? |
| The Defendant: | Yes. |
| Mr. Duszkiewicz: | Judge, there's another caveat too, as I understand it. Scotland has to be willing to accept him into their program. That's outside of our control either in the Western District or the United States Government. |
| The Court: | You understand? |
| The Defendant: | Yes. |
| The Court: | Okay. No guarantees, in essence, but nobody here is blocking your way to get there in short, do you understand? |
| The Defendant: | Yes. |
| The Court: | Okay. And that's acceptable to you? |
| The Defendant: | Yes. |
| The Court: | Okay. |
| The Defendant: | As long as nobody here can stop me. |
| The Court: | If somebody tried that's here, that would violate the terms of this agreement. |
| The Defendant: | That's what I want to know. Thanks. |

(Docket No. 548, 35:20-38:1)

Petitioner now essentially seeks to invalidate his plea on the basis that his attorney overestimated the likelihood of his transfer to Scotland. But as the above conversation shows, Petitioner understood that there were "[n]o guarantees." Petitioner cannot claim to have been coerced into accepting a plea when he acknowledged that the only promise in the plea agreement was that the United States District Attorney's office in the Western District of New York would not oppose his request. The fact that Petitioner's counsel may have incorrectly assessed the probability that the transfer would be granted is not enough to unmake his plea. See Papetti v. United States, Civil Action No. 09-3626, 2010 WL 3516245, at *8 (E.D.N.Y. Aug. 31, 2010) ("The allocution by itself is sufficient to find that [petitioner] understood that there was no guarantee that he would receive any particular sentence 'regardless of what counsel had allegedly 'promised' him before hand'" (citation omitted)); Palma v. United States, Nos. S1 03 Cr. 1484(JFK), 08 Cv.1934(JFK), 2008 WL 3539960, at *5 (S.D.N.Y. Aug. 12, 2008) (claim that guilty plea premised on attorney's assurance that he receive minor role adjustment unavailing where petitioner made aware of possible exposure to sentence in 70-87 month range); Maldonado v. United States, Nos. 03 Civ. 7864(NRB), 00 CR. 756(NRB), 94 CR. 1056(NRB), 2004 WL 360442, at *4 (S.D.N.Y. Feb. 26, 2004) ("[W]hatever reasonable *hope* petitioner may have had that his willingness to cooperate would lead to a reduced sentence, petitioner's answers at his plea proceeding show that he understood that no guarantee had been made to this effect." (emphasis in original)).

Petitioner's attempt to rely on statements made by his attorney outside the text in the plea agreement is also unavailing. As already discussed, this Court warned petitioner that he would not have the opportunity to argue anything not contained in the plea

8

agreement. His claim that he was told his transfer was a certainty is in direct contradiction to this Court's dialogue with Respondent, as well as the plea agreement itself, which provided that Petitioner received "no promises made by anyone other than those contained in this agreement." (Docket No. 456, ¶ 28.)

### 2. Respondent Did Not Breach Plea Agreement

Plea agreements are interpreted according to principles of contract law. United States v. Griffin, 510 F.3d 354, 360 (2d Cir. 2007) *abrogated on other grounds.* "To determine whether a plea agreement has been breached, we 'look[] to the reasonable understanding of the parties as to the terms of the agreement.'" United States v. Riera, 298 F.3d 128, 133 (2d Cir. 2002) (quoting United States v. Colon, 220 F.3d 48, 51 (2d Cir. 2000)). Ambiguities in the agreement are resolved in a defendant's favor. Griffin, 510 F.3d at 360.

Petitioner argues that he believed Respondent would not merely not oppose his transfer, but would actually contact the Department of Justice and inquire into the process to transfer Respondent to Scotland. Petitioner contends that his understanding was that Respondent would have inquired into the likelihood of any transfer before making the agreement and providing assurances.

As the quoted passages reveal, Petitioner's interest was in ensuring that Respondent did not oppose the request. He evidenced his understanding of that fact when he stated his satisfaction with the plea agreement provided "nobody here can stop me." This contradicts his present contention that his reasonable understanding was that the Government's role "was to be something more than 'unopposed.'" (Docket No. 551, p. 12.) Petitioner's argument that he "believed the Office of the U.S Attorney ha[d] actually

9

contacted the [Department of Justice] and inquired of the process" is bellied by the plea agreement's language stating that "[t]he *defendant* has had an opportunity to fully determine what the consequences of the defendant's conviction may be on the defendant immigration status." (Docket No. 551, pp. 11-12 (emphasis added)). At his plea, this Court further emphasized that it was Petitioner's attorneys who would look into his transfer, and that Respondent only agreed not to object. Then, at sentencing, Petitioner's attorney discussed the efforts to which he and co-counsel had gone to secure representation for Petitioner in the United Kingdom. (Docket No. 549, 22:6-11.)

It was thus Petitioner and his attorneys who were responsible for the transfer to Scotland, not Respondent. Respondent did not breach the plea agreement.[3]

### 3. Petitioner's Plea was Knowing and Voluntary

"A plea is voluntary when it is not induced by threats or misrepresentations, and the defendant is made aware of the direct consequences of the plea . . . . [a] plea is knowing and intelligent when the defendant is competent, aware of the charges and advised by competent counsel." United States v. Galbraith, 313 F.3d 1001, 1006 (7th Cir. 2002). It is the petitioner's burden to show that his plea was not knowing and voluntary. See Hargrove v. United States, No. 03-CV-6634, 2004 WL 2123497, at *2 (W.D.N.Y. Aug. 10, 2004).

For largely the same reasons already discussed, Petitioner claims that his plea "may

---

[3]Under the same heading, Petitioner also argues that his attorneys abandoned him and left the matter in the hands of his family and an attorney in England. Petitioner acknowledges, however, that it was not Scotland that refused transfer, but the Department of Justice who issued the denial. This allegation also stands in sharp contrast to the sentiment Petitioner expressed at sentencing, when he thanked this Court for assigning him his attorneys and described them as "good lawyers." (Docket No. 546, 38:17-39:11.)

not be considered knowing or voluntary because it was unduly influenced by unfulfillable promises and wrongly coerced." (Docket No. 551, p. 14.) Having already determined that Petitioner did not have a basis for his understanding or that said transfer was assured, this Court need not further consider Petitioner's contention that his plea was either involuntary or unknowing.

**C.    Certificate of Appealability**

For a certificate of appealability to issue, the petitioner must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make the required "substantial showing" the petitioner must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  <u>Rhagi v. Astuz</u>, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam) (citations omitted).  Petitioner has made no such substantial showing of the denial of a constitutional right in this case. Accordingly, a Certificate of Appealability is denied.

## IV.  CONCLUSION

For the reasons stated above, Petitioner's Motion to Vacate, Set Aside, or Correct his Sentence and Conviction is denied.  If Petitioner wishes to appeal, he must file a Notice of Appeal with the Clerk's Office, United States District Court, Western District of New York, within 30 days of the date of judgment in this action.  Requests to proceed on appeal as a poor person, if any, must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## V.  ORDERS

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence and Conviction pursuant to 28 U.S.C. § 2255 (Docket No. 550) is DENIED.

FURTHER, that a Certificate of Appealability pursuant to 28 U.S.C. § 2253 is DENIED.

FURTHER, that it is hereby certified, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and leave to proceed as a poor person is therefore DENIED.  See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

FURTHER, that the Clerk of the Court is directed to close 04-CR-222S, 9-CR-304S, and 11-CV-236S.

SO ORDERED.

Dated:      June 24, 2012
            Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court