UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

**DECISION AND ORDER**
04-CR-222S

HUGH STEVENS,

Defendant.

## I. INTRODUCTION

Presently before this Court is Defendant Hugh Stevens's Motion for Sentence Reduction under the federal compassionate-release statute (Docket Nos. 562, 569), which the government opposes (Docket No. 568).  See 18 U.S.C. § 3582 (c)(1)(A).  For the reasons discussed below, Stevens's motion is denied.

## II. BACKGROUND

On September 10, 2009, Stevens pleaded guilty to Count Six of the superseding indictment in this case, which charged him with engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848 (a).  (Docket Nos. 456, 457.)  At that same time, as part of a global plea, Stevens also pleaded guilty to Count One of the superseding indictment in case number 09-CR-304S, which charged him with conspiring to import, possess, and distribute a List I chemical knowing and having reasonable cause to believe that it would be used to unlawfully manufacture a controlled substance, in violation of 21 U.S.C. § 846.  (Id.)

Approximately six months later, on March 17, 2010, this Court imposed a combined sentence of, *inter alia*, 240 months' imprisonment and 3 years' supervised

1

release, which was consistent with the sentencing provision in the plea agreement that called for imposition of an agreed-upon 240-month sentence pursuant to Rule 11 (c)(1)(C) of the Federal Rules of Criminal Procedure.  (Docket Nos. 456, 514, 519.)

Stevens is a citizen of Scotland and a lawful permanent resident of the United States.  At the time of his plea, it was contemplated that Stevens could possibly serve his sentence in Scotland if approved to do so under the Treaty for the Transfer of Offenders between the United States and Scotland.  See Stevens v. United States, Nos. 04-CR-222S, 09-CR-304S, 11-CV-236S, 2012 WL 2401384, at *1 (W.D.N.Y. June 25, 2012)[1] (denying Stevens's motion to vacate, set aside, or correct his sentence).  The local United States Attorney's Office agreed not to oppose Stevens's request for transfer under the treaty, but the ultimate decision fell to the Office of Enforcement Operations of the U.S. Department of Justice and to Scottish officials.  Id.  Ultimately, Scottish officials denied Stevens's request for transfer because he had insufficient contacts with Scotland, resulting in Stevens serving his sentence in the United States.  Id. at *3-5; Affirmation of Cheryl Meyers Buth, Esq. ("Buth Aff."), Docket No. 562-1, ¶¶ 17-18 and Exhibit C.

Stevens is currently housed at Correctional Institution Big Spring (Flightline) in Big Spring, Texas, which is a Bureau of Prisons contracted correctional institution operated by a private corporation.  (Buth Aff., ¶¶ 34, 39.)  By letter dated March 30, 2020, Stevens, through counsel, requested that the warden of Big Spring file a motion to reduce his sentence on his behalf.  (Buth Aff., Exhibit A.)  As of May 4, 2020, Stevens has received no response to that letter.[2]  (See Reply Affirmation of Cheryl Meyers Buth, Esq. ("Buth

---

[1] This decision is filed at docket number 557.

[2] The government represents that the warden denied Stevens's request on April 27, 2020, because Stevens remains subject to an immigration detainer.  (Memorandum of Law, Docket No. 568, p. 2.)  Stevens's

Reply Aff."), ¶ 4.)

Anticipating that the warden would not act favorably on his request, and having served more than 80% of his sentence, Stevens moved in this court on March 31, 2020, for a sentence reduction under 18 U.S.C. § 3582 (c)(1)(A)(i) on the basis that his age, medical conditions, the outbreak of COVID-19, and other reasons constitute extraordinary and compelling reasons warranting such relief. (Docket No. 562.) The government opposes Stevens's motion on all fronts. (Docket No. 568.)

### III. DISCUSSION

**A.    Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)(i)**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Gotti, 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020). One such statute is 18 U.S.C. § 3582 (c)(1)(A)(i) which, as amended by the First Step Act of 2018,[3] provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in

---

counsel represents, upon information and belief, that Stevens was told that his request was denied based on his status as a "presumptively deportable alien." (Buth Reply Aff., ¶ 4.)

[3] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release after proper exhaustion. See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018). The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions. See, e.g., United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *1 n.1 (S.D.N.Y. Feb. 4, 2020) (explaining the First Step Act amendment); United States v. Gotti, 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020) (same).

section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute.  See United States v. Ebbers, (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020).  A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions.  See 18 U.S.C. § 3582 (c)(1)(A)(i); United States v. Perez, 17 Cr. 513-3 (AT), 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020).  If the court finds, after consideration of the applicable 18 U.S.C. § 3553 (a) factors, that the defendant has met this burden, it may reduce the defendant's sentence under the statute.  See 18 U.S.C. § 3582 (c)(1)(A)(i); see also United States v. Gileno, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *1-2 (D. Conn. Mar. 19, 2020).

The statutory exhaustion requirement is mandatory and "must be strictly enforced." United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004)); United States v. Cassidy, 17-CR-116S, 2020 WL 1969303, at *3-8 (W.D.N.Y. Apr. 24, 2020) (finding exhaustion mandatory).  The exhaustion requirement is met when the earlier of two circumstances occurs: (1) the defendant fully exhausts all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of

imprisonment on his or her behalf, [4] or (2) 30 days lapse from the date the warden of the defendant's facility receives the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

Congress delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A)(i).  See 28 U.S.C. § 994 (t).  The Commission, in turn, promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582 (c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines.  The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction:  "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons".  See U.S.S.G. § 1B1.13.

At issue here are the "Medical Condition of the Defendant," "Age of the Defendant," and "Other Reasons" examples.  The "Medical Condition of the Defendant" example

---

[4] The Scparta court explained the administrative process before the Bureau of Prisons as follows:

> First, an inmate must request the warden of her facility to file a compassionate-release motion on her behalf.  28 C.F.R. § 571.61 (a).  Second, if the warden denies the prisoner's request, she has 20 days to appeal to the BOP's Regional Director.  Id. § 571.63 (a) (providing that denials of compassionate-release requests are governed by the BOP's general Administrative Remedy Program, contained in 28 C.F.R. §§ 542.10-542.19); id. § 542.15 (a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.").  Third, if the Regional Director denies the prisoner's request, she then has 30 days to appeal to the BOP General Counsel.  Id. § 542.15 (a).  A decision from the General Counsel is the final step in the BOP's Administrative Remedy Program, id., and therefore "constitutes a final administrative decision," id. § 571.63 (b).

United States v. Scparta, 18-cr-578 (AJN), 2020 WL 1910481, at *7 (S.D.N.Y. Apr. 20, 2020).

provides as follows:

> Medical Condition of the Defendant—
>
> > (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease and advanced dementia.
> >
> > (ii) The defendant is—
> >
> > > (I) suffering from a serious physical or medical condition,
> > >
> > > (II) suffering from a serious functional or cognitive impairment, or
> > >
> > > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 comment n. 1 (A).

The "Age of the Defendant" example provides as follows:

> The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 comment n. 1 (B).

The "Other Reasons" example is a catch-all provision encompassing "an extraordinary and compelling reason other than, or in combination with, the [other] reasons described." Id. n. 1 (D).

As it relates to the requirement that a sentence reduction be consistent with the

applicable Sentencing Guidelines provisions, U.S.S.G. § 1B1.13 is once again the relevant provision.  It provides that a court may reduce a sentence if, after consideration of the 18 U.S.C. § 3553 (a) factors, it determines that

> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559 (c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142 (g); and
>
> (3) the reduction is consistent with this policy statement.

See U.S.S.G. § 1B1.13.

Finally, district courts have broad discretion in deciding whether to grant or deny motions for sentence reduction.  See Gileno, 2020 WL 1307108, at *2.

## B.    Stevens's Motion for Compassionate Release

Stevens is nearly 74 years old.  (Buth Aff., ¶ 5.)  He has served 195 months of his 240-month sentence and has a Bureau of Prisons release date of March 5, 2022.  (Id.) He allegedly suffers from diabetes and neuropathic pain.  (Buth Aff., ¶¶ 5, 57-60.)  He is also allegedly highly susceptible to contracting COVID-19 because of his age and medical conditions.  (Buth Aff., ¶¶ 5, 61-68.)  Based on these circumstances, Stevens argues that he is entitled to compassionate release.[5]  The government argues that Stevens has failed to demonstrate that compassionate release is warranted.

---

[5] This Court notes that even if it were to grant his motion, Stevens would not actually be released because he remains subject to an immigration detainer.

### 1.  Exhaustion of Administrative Rights

As indicated above, 18 U.S.C. § 3582 (c)(1)(A) contains a threshold exhaustion requirement.  To satisfy this requirement, a defendant must demonstrate that either (1) he or she fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, or (2) 30 days have lapsed from the date the warden of the defendant's facility received the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

For reasons discussed at length in two previous decisions (fully incorporated herein), this Court finds that the statutory exhaustion requirement is mandatory and cannot be excused.  See Cassidy, 2020 WL 1969303, at *3-8; United States v. Schultz, 17-CR-193S, 2020 WL 1872352, at *3-6 (W.D.N.Y. Apr. 15, 2020); see also United States v. Montanez, 15-CR-122-FPG, 2020 WL 2183093, at *2-11 (W.D.N.Y. May 5, 2020) (finding § 3582 (c)(1)(A)'s exhaustion requirement mandatory).  Section 3582 (c)(1)(A) unambiguously conditions a court's authority to modify a previously imposed sentence on satisfaction of its exhaustion provisions.  See United States v. Vence-Small, No. 3:18-cr-00031 (JAM), 2020 WL 1921590, at *3 (D. Conn. Apr. 20, 2020) ("Importantly, however, Congress conditioned the right of a defendant to file a motion for sentence reduction upon the defendant's first applying to the prison warden to file a motion on the defendant's behalf."); United States v. Fana, 1:19-cr-11-GHW, 2020 WL 1816193, at *5 (S.D.N.Y. Apr. 10, 2020) ("The language of this provision ("[t]he court may not") expressly prohibits the Court from granting relief unless the statutory preconditions are satisfied.").

As a statutory exhaustion provision—one imposed by Congress—§ 3582

(c)(1)(A)'s exhaustion requirement is not subject to judge-made exceptions, as *judge-made* exhaustion requirements may be.  See Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1856-57, 195 L. Ed. 2d 117 (2016); see also Vence-Small, 2020 WL 1921590, at *4 (explaining that Ross "made clear that judges are not at liberty to add judge-made exceptions to exhaustion requirements that are made mandatory by statute").   As the Ross court explained:

> No doubt, judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions. But a statutory exhaustion provision stands on different footing.  There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion. Time and again, this Court has taken such statutes at face value—refusing to add unwritten limits onto their rigorous textual requirements.

Id. (citations omitted); see also McCarthy v. Madigan, 503 U.S. 140, 144, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992) ("Of 'paramount importance' to any exhaustion inquiry is congressional intent.  Where Congress specifically mandates, exhaustion is required." (citations omitted)).

Consequently, because Congress did not write any exceptions into § 3582 (c)(1)(A)'s exhaustion provisions (other than the 30-day lapse provision), those plain and unambiguous provisions must be strictly enforced and are not subject to judge-made exceptions.  See Theodoropoulos, 358 F.3d at 172 ("As a general rule, courts are required to strictly enforce statutory exhaustion requirements."); Bastek v. Fed. Crop Ins. Corp., 145 F.3d 90, 94 (2d Cir. 1998) ("Statutory exhaustion requirements are mandatory, and courts are not free to dispense with them."); United States v. DeMaria, 17 Cr. 569 (ER), 2020 WL 1888910, at *3 (S.D.N.Y. Apr. 16, 2020) ("The plain language of [§ 3582

9

(c)(1)(A)] does not give this Court any flexibility in allowing waiver.").

Here, Stevens's counsel sent a written request to the warden of Stevens's facility on March 30, 2020.  (See Buth Aff., Exhibit A.)  Even assuming time for mailing, 30 days have since passed.   Nonetheless, the government appears to argue that Stevens's motion is barred because he filed it on March 31, 2020, well before exhaustion was completed.  The government, however, essentially agreed to suspend Stevens's motion until exhaustion was complete when it consented to a deferred briefing schedule, notwithstanding that it could have opposed the motion on exhaustion grounds pursuant to the initial scheduling notice.  (See Docket Nos. 565 (initial scheduling notice), 566 (unopposed motion to modify scheduling notice).)  Consequently, with 30 days having lapsed since the date the warden received Stevens's request, this Court finds that he has satisfied the statutory exhaustion requirement.

### 2. Extraordinary and Compelling Reasons for Sentence Reduction

Stevens is a 73-year-old, insulin-dependent diabetic suffering from neuropathic pain who is at high risk to contract COVID-19.  (Buth Aff., ¶¶ 5, 58; Buth Reply Aff., ¶ 7.)  He suffers diabetes-related neuropathic pain in his hands and feet, which at times, results in uncontrollable tremors in his extremities.  (Buth Aff., ¶ 58; Buth Reply Aff., ¶ 8.)  While Stevens did not submit medical records in support of his motion, counsel represents that she is in possession of medical records substantiating Stevens's condition.  (Buth Aff., ¶ 60; Buth Reply Aff., ¶ 25.)  In light of that representation, this Court will assume that Stevens suffers from the medical conditions claimed in his papers.  Nonetheless, this Court finds no basis to grant a sentence reduction.

To begin, Stevens has not demonstrated extraordinary and compelling reasons for

a sentence reduction under the medical-condition section of U.S.S.G. § 1B1.13. Even

assuming that Stevens is an insulin-dependent diabetic with attendant neuropathic pain,

his condition is not a terminal illness (i.e., a serious and advanced illness with an end of

life trajectory), see U.S.S.G. § 1B1.13 comment n. 1 (A)(i); nor is it a serious condition,

impairment, or age-related deterioration that substantially diminishes his ability to provide

self-care, see U.S.S.G. § 1B1.13 comment n. 1 (A)(ii).  See United States v. Korn, 15-

CR-81S, 11-CR-384S, 2020 WL 1808213, at *3-6 (W.D.N.Y. Apr. 9, 2020).  Moreover, as

it relates to the age-related section of U.S.S.G. § 1B1.13, there is no indication that

Stevens suffers from diabetes to the degree that he is experiencing a serious deterioration

in his physical or mental health due to the aging process.[6]  See U.S.S.G. § 1B1.13

comment n. 1 (B).

As for the "Other Reasons," section of U.S.S.G. § 1B1.13 comment n. 1 (D), which

provides for relief if there exist extraordinary and compelling reasons for sentence

reduction other than (or in combination with) what is specifically prescribed, Stevens

appears to raise a number of arguments.[7]  He principally contends that his age and

medical condition make him highly susceptible to contracting and dying from COVID-19

---

[6] Whether a defendant qualifies for an age-related sentence reduction under U.S.S.G. § 1B1.13 comment n. 1 (B) requires a "fact-intensive" analysis.  See United States v. Ebbers, (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *5 (S.D.N.Y. Jan. 8, 2020).  Again, this Court assumes the facts as Stevens presents them.

[7] The Bureau of Prisons has implemented a Program Statement to guide its own implementation of 18 U.S.C. § 3582 (c)(1)(A).  See Bureau of Prisons Program Statement 5050.50, eff. January 17, 2019 (available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query# (last visited May 8, 2020)). This Court assumes without deciding that this Program Statement is non-binding as it relates to the "Other Reasons" provision of U.S.S.G. § 1B1.13 comment n. 1 (D), and that it is therefore not constrained by what the Director of the Bureau of Prisons might consider other extraordinary and compelling reasons for sentence reduction.  See, e.g., United States v. Marks, 03-CR-6033L, 2020 WL 1908911, at *5-7 (W.D.N.Y. Apr. 20, 2020) (finding that post-First Step Act, district courts are no longer bound by the specific categories warranting sentence reduction identified by the Sentencing Commission in U.S.S.G. § 1B1.13, including affording any deference to the Director for purposes of U.S.S.G. § 1B1.13 comment n. 1 (D) ("Other Reasons")).

(see Buth Aff., ¶¶ 61-68; Buth Reply Aff., ¶¶ 7, 28).  See United States v. Resnick, 14 CR 810 (CM), 2020 WL 1651508, at *7 (S.D.N.Y. Apr. 2, 2020) (considering compassionate-release request based on a defendant's high susceptibility to COVID-19 under the "catch-all" provision of U.S.S.G. § 1B1.13 comment n. 1 (D)).  He also appears to argue that his immigration status (Buth Aff., ¶¶ 22-31; Buth Reply Aff., ¶ 32), separation from his family (Buth Aff., ¶¶ 32-34, 37-39, 42-51; Buth Reply Aff., ¶¶ 7, 9), and conditions of confinement (Buth Aff., ¶¶ 35, 36, 40, 59; Buth Reply Aff., ¶¶ 7, 8) each or in combination warrant relief.

Addressing the COVID-19-related arguments first, it is undisputed that Stevens's age and medical condition make him particularly susceptible to COVID-19.  COVID-19, of course, is the sweeping, potentially deadly, worldwide pandemic that required the President of the United States to declare a national emergency on March 13, 2020.  The Centers for Disease Control and Prevention ("CDC") has determined that individuals 65 years and older are at high risk for severe illness from COVID-19, as are people of any age with certain underlying medical conditions, including diabetes.[8]  See Jones v. Wolf, No. 20-CV-361, 2020 WL 1643857, at *8 (W.D.N.Y. Apr. 2, 2020) (taking judicial notice that "for people of advanced age, with underlying health problems, or both, COVID-19 causes severe medical conditions and has increased lethality") (quoting Basank v. Decker, 20 Civ. 2518, 2020 WL 1481503, at *3 (S.D.N.Y. Mar. 26, 2000)).  Stevens therefore falls into the high-risk category.

But the Bureau of Prisons has experience combatting infectious diseases and has

---

[8] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 7, 2020).

developed and implemented a multi-point plan to battle COVID-19.  Preparations began in January 2020 when the Bureau of Prisons instituted its Pandemic Influenza contingency plan, specifically modified to fight COVID-19.[9]  This plan is based on guidance and directives from the World Health Organization, the Centers for Disease Control and Prevention, and other related agencies.  Under this plan, the Bureau of Prisons has implemented quarantine and isolation protocols, restricted inmate transfers, limited group gatherings, employed screening procedures, and suspended visitation and tours.  These and other measures are constantly reassessed to further mitigate the exposure and spread of COVID-19 among the federal prison population. BOP has also extended these protocols to its private detention contractors, like Big Spring.[10]

The government represents that as of May 1, 2020, there are no confirmed cases of COVID-19 at Big Spring.  (Memorandum of Law, Docket No. 568, p. 3.)  Stevens does not dispute this fact (see Buth Reply Aff., ¶ 30), but nonetheless argues that reduction in sentence is warranted because he may become exposed to the disease in the coming weeks or months.

As noted above, this Court is aware that Stevens falls into the high-risk category, and it is further aware that some courts have granted compassionate release on that basis.  See, e.g., United States v. Zukerman, 16 Cr. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (collecting cases finding that compassionate release is justified for individuals with risk factors that make them particularly susceptible to COVID-19).

---

[9] See  https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp  (last  visited  May  7, 2020).

[10] See https://www.bop.gov/coronavirus/covid19_status.jsp (last visited May 7, 2020).

Nonetheless, in this Court's view, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme. See Korn, 2020 WL 1808213, at *6; see also United States v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"); United States v. Eberhart, Case No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13"); United States v. Zywotko, Case No. 2:19-cr-113-FtM-60NPM, 2020 WL 1492900 (M.D. Fla. Mar. 27, 2020) (following Eberhart).

In addition, although Stevens is clearly unhappy at Big Spring, he has failed to show that Big Spring is unable to manage the pandemic if it reaches the facility or to adequately treat affected inmates. See, e.g., Gileno, 2020 WL 1307108, at *4 ("Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno."); Eberhart, 2020 WL 1450745, at *2; Zywotko, 2020 WL 1492900, at *2 (denying compassionate release where "the BOP has implemented an action plan to mitigate the effect of COVID-19 and prevent potential

14

transmissions into and throughout its correctional facilities"); United States v. Clark, 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (applying reasoning of Gileno and Eberhart); United States v. Gagne, No. 3:18-cr-242 (VLB), 2020 WL 1640152, at *4 (D. Conn. Apr. 2, 2020) (denying compassionate release where the defendant failed to show "that the [Bureau of Prisons] cannot adequately manage the [COVID-19] pandemic or treat her to a reasonable degree").

Here, Stevens alleges nothing more than the general possibility that he could contract COVID-19, and he has made no showing that Big Spring's plan to combat the disease is inadequate or that Big Spring will be unable to adequately treat him if he contracts it.  Thus, he has not demonstrated an extraordinary and compelling reason for a sentence reduction based on COVID-19.  See Korn, 2020 WL 1808213 (holding that "the mere *possibility* of contracting a communicable disease, in the absence of any Bureau of Prisons failures, does not rise to the level of an extraordinary and compelling reason to reduce a sentence under U.S.S.G. § 1B1.13 comment n. 1 (D) (emphasis in original)); see also Gileno, 2020 WL 1307108, at *4 ("the Court cannot assume that the Bureau of Prisons will be unable to manage the outbreak or adequately treat Mr. Gileno should it emerge at his correctional facility while he is still incarcerated"); Eberhart, 2020 WL 1450745, at *2.

The other grounds for relief that Stevens presents are less defined but equally unpersuasive.  Stevens maintains that he may yet have grounds and a procedural mechanism through which to challenge the constitutionality of his convictions.  (See Buth Aff., ¶¶ 22-31; Buth Reply Aff., ¶ 32.)  He also contends that he has endured separation from his family because Big Spring refuses to transfer him to a facility closer to them.

(See Buth Aff., ¶¶ 32-34, 37-39, 42-51; Buth Reply Aff., ¶¶ 7, 9.)  Finally, Stevens cites various conditions of his confinement, including lack of visitation, threats, and the unavailability of a proper diabetic diet, as reasons warranting a sentence reduction.  (See Buth Aff., ¶¶ 35, 36, 40, 59; Buth Reply Aff., ¶¶ 7, 8.)

But whether considered individually or in combination, this Court fails to see how these additional reasons warrant the extraordinary relief of a sentence reduction.  While Stevens's desire to end his criminal sentence and proceed to challenging his removability from the United States is understandable, it is not a ground to reduce his sentence.  So too his desire to be transferred closer to his family, which this Court notes Stevens is already challenging by way of a habeas corpus petition pending in the Northern District of Texas.  (See Buth Aff., ¶¶ 42-51.)  Finally, this Court finds that the conditions of confinement that Stevens alleges do not constitute extraordinary or compelling reasons for a sentence reduction, nor is a motion for sentence reduction the proper avenue to challenge those alleged conditions.

Accordingly, for all of the reasons stated above, this Court finds that Stevens has failed to demonstrate extraordinary and compelling reasons warranting a sentence reduction.

### 3.  Consideration of the § 3553 (a) Factors

Because Stevens has failed to demonstrate extraordinary and compelling reasons warranting a sentence reduction, it is unnecessary for this Court to fully examine the § 3553 (a) factors.  See 18 U.S.C. § 3582 (c)(1)(A) (requiring consideration of the applicable § 3553 (a) factors).  This Court notes, however, that although it was his first federal

offense,[11] Stevens committed serious drug-trafficking crimes.  Between November 2002 and September 2004, Stevens organized, supervised, and managed a criminal enterprise engaged in the illegal importation of ephedrine, a substance used to manufacture methamphetamine.  (Docket No. 456.)  Stevens and his confederates transported 19,615 pounds of ephedrine from Canada into the United States using the United States mails and smuggling it over the border secreted in a horse trailer.  (Id.)  The ephedrine was then delivered to locations within the United States, with Stevens himself personally delivering 100 kilograms of ephedrine to a business in California and 200 kilograms of ephedrine to an individual in Nevada.  (Docket No. 517.)  This is serious criminal conduct for which Stevens agreed to serve 240 months in prison.[12]

### 4. Consistency of a Reduction with U.S.S.G. § 1B1.13

Because Stevens has failed to demonstrate extraordinary and compelling reasons for a sentence reduction, it is also unnecessary for this Court to consider whether a sentence reduction would be consistent with U.S.S.G. § 1B1.13.  See 18 U.S.C. § 3582 (c)(1)(A) (requiring that any sentence reduction be consistent with applicable policy statements issued by the Sentencing Commission).  That is, this Court need not determine whether Stevens is a danger to the safety of any other person or to the community.  See U.S.S.G. § 1B1.13 (2).

### 5. Hearing

Finally, Stevens requests that this Court schedule a hearing on his motion.  Aside

---

[11] Stevens has two minor state convictions from 1984 and 1994.  (Docket No. 517.)

[12] It should be noted that if not for the Rule 11 (c)(1)(C) sentencing agreement, Stevens would have faced a guidelines imprisonment range of 360 months to life and a statutory maximum sentence of life imprisonment (on the § 848 (a) count).  (Docket No. 517.)  Stevens also received favorable sentencing consideration for Sandra Jacobi-Stevens, his wife and co-defendant.  (Id.)

from there being no cause for a hearing based on the record submitted, there is no right to a hearing for sentence modifications under 18 U.S.C. § 3582 (c).  See Fed. R. Crim. P. 43 (b)(4) (providing that a defendant need not be present when "[t]he proceeding involves the . . . reduction of sentence under . . . 18 U.S.C. § 3582 (c)); United States v. Wilson, 5:08-CR-50051-KES, 2019 WL 7372975, at *3 (D. S.D. Dec. 31, 2019) (finding no entitlement to hearing for defendant seeking reduction of sentence under 18 U.S.C. § 3582 (c)(1)(A)).  Stevens's request for a hearing is therefore denied.

## IV. CONCLUSION

For all of the reasons stated above, Stevens's Motion for Sentence Reduction is denied.

## V. ORDER

IT HEREBY IS ORDERED, that Stevens's Motion for Sentence Reduction (Docket No. 562) is denied.

SO ORDERED.

Dated:     May 12, 2020
             Buffalo, New York

                                      s/William M. Skretny
                                   WILLIAM M. SKRETNY
                          United States District Judge

18